Merrimack
No. 79-364

CLAYTON W. DOWNING

v.

MONITOR PUBLISHING COMPANY, INC.

May 22, 1980

384

*Brown & Nixon*, of Manchester (*Frank E. Kenison* orally), for the plaintiff.

*Orr & Reno*, of Concord (*William L. Chapman* orally), for the defendant.

GRIMES, C.J. The issue in this libel case is whether the defendant should be required to disclose the source of its information. We hold that it should.

The plaintiff was a public official at the time of the alleged libel. The plaintiff, then chief of police, claimed to have sustained a gunshot wound on April 3, 1975, while checking on a residence in Boscawen. An investigation ensued during which the defendant published several articles about the incident, suggesting that the plaintiff had not told the truth about the incident.

On April 12, 1975, the defendant published an article that contained the following statement:

> Boscawen Police Chief Clayton W. Downing failed sub-
> stantive portions of a lie detector test on his account of how
> he was shot April 3, the Monitor learned yesterday.
>
> Downing failed a test Monday given at State Police Head-
> quarters under the direction of the Attorney General's
> Office, a source close to the investigation said.
>
> Four polygraph experts reviewed and agreed on the
> results, the source said.
>
> . . .
>
> State Police Polygraph tests are accurate more than 95
> percent of the time. . . .

The plaintiff brought an action of libel based on the above publication. By way of discovery, he propounded interrogatories to the defendant dated March 8, 1976, one of which asked for the "name, address and title" of each person who provided information supporting the statement in the article that plaintiff had "failed . . . a lie detector test." The defendant responded that its employees John Reid, Rod Paul and Tom Gerber had provided information for the article. The defendant further stated that additional sources provided specific information but refused to disclose those sources on the grounds of privilege.

In January 1979, the plaintiff filed a motion to compel discovery in which he sought the names of the defendant's undisclosed sources. At a non-evidentiary hearing on the motion, the plaintiff represented through counsel that he could prove that the article was false with respect to his failing a polygraph test, the agreement of four experts and the 95 percent accuracy. The defendant, in turn, offered to prove that the statements were true and that it acted without actual malice. The Court (*Contas*, J.) heard no evidence on these issues but concluded on February 16, 1979, that the information sought was "essential to the material issue in dispute . . . [and] is not available from any source other than the press. . . ." After granting the motion, the court approved this interlocutory appeal pursuant to Supreme Court Rule 8.

 Because the plaintiff is a public official, to prevail he must prove not only that the statements were false, but also that the defendant either knew they were false or published them recklessly. *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964).

*New York Times* imposes a heavy burden upon a public official suing for libel and conversely, gives great protection to first amendment rights. In none of the cases born of *New York Times* has the United States Supreme Court suggested that there is any first amendment restriction upon the sources from which a plaintiff can obtain the evidence necessary to prove the essential elements of his libel case. *Herbert v. Lando*, 441 U.S. 153, 160 (1979). One way to show reckless publication is to show that "there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports." *St. Amant v. Thompson*, 390 U.S. 727, 732 (1968). Another is to show that there was in fact no informant and that the publication was therefore baseless. If a defendant is unable or unwilling to name its informant, it may be inferred that there was none. If there was in fact an informant, a plaintiff would be unable to show that there "were obvious reasons to doubt" his veracity if he is unable to determine who the informant was. "[U]nless liability is to be completely foreclosed," the identity of the informer must be available to the plaintiff. *Herbert v. Lando*, *supra* at 160.

■ It is untenable to impose the heavy *New York Times* burden of proof upon a plaintiff and at the same time prevent him from obtaining the evidence necessary to meet that burden. We hold that there is no absolute privilege allowing the press to decline to reveal sources of information when those sources are essential to a libel plaintiff's case. *See Branzburg v. Hayes*, 408 U.S. 665 (1972); *In re Farber*, 78 N.H. 259, 394 A.2d 330, *cert. denied sub nom New York Times v. New Jersey*, 439 U.S. 997 (1978). Even the President does not have an absolute privilege against disclosure of materials subpoenaed for a judicial proceeding. *United States v. Nixon*, 418 U.S. 683 (1974). Our earlier ruling in *Opinion of the Justices*, 117 N.H. 386, 373 A.2d 642 (1977), that there is a press privilege under the New Hampshire Constitution not to disclose the source of information when the press is not a party to an action is not applicable here. That opinion expressly left open "whether libel actions would require disclosure." *Id.* at 389, 373 A.2d at 647. In the case at hand we do not have the governmental involvement versus the press that was at issue in *Keene Publishing Corp. v. Keene District Court*, 117 N.H. 959, 380 A.2d 261 (1977) or in *Keene Publishing Corp. v. Cheshire County Superior Court*, 119 N.H. 710, 406 A.2d 137 (1979). Furthermore, the United States Supreme Court has indicated that to meet the *New York Times*

standard, any press privilege must give way before the First Amendment. *Herbert v. Lando*, 441 U.S. 153 (1979).

■ The defendant argues that the plaintiff should at least first be required to prove that the statement was false. We do not agree. Such a requirement was expressly rejected in *Herbert v. Lando*, 441 U.S. at 174-75, n.23. We do agree that some safeguard should exist to prevent an order of disclosure when the plaintiff's claim of falsehood is entirely baseless. It is sufficient to require that the plaintiff satisfy the trial court that he has evidence to establish that there is a genuine issue of fact regarding the falsity of the publication. In this case, the trial court, having received offers of proof from respected counsel, could properly conclude that the issue of falsity involved a genuine issue of fact. *Town of Gilmanton v. Champagne*, 116 N.H. 507, 508-09, 363 A.2d 411, 412 (1976); *see Salmonsen v. Rindge*, 113 N.H. 46, 48, 299 A.2d 926, 927 (1973).

■ If the defendant had contended that there was no genuine issue of fact with respect to the falsity of the statement, it could have filed a motion for summary judgment. RSA 491:8-a (Supp. 1979); *see Thomson v. Cash*, 119 N.H. 371, 402 A.2d 651 (1979); *Cervantes v. Time, Inc.*, 464 F.2d 986 (8th Cir. 1972). There is nothing to prevent the trial judge from requiring an affidavit from the ·plaintiff if he deems it necessary to satisfy himself that plaintiff's claim is not without some basis. *Herbert v. Lando*, 441 U.S. at 174-75, n.23. In sum, we hold that there was no error or abuse of discretion on the part of the trial court in applying the standards it did in its order of February 16, 1979.

■ ■ We come to the question of enforcement of the court's order. Of course, the trial court is free to exercise its contempt power to enforce its order. We are aware, however, that most media personnel have refused to obey court orders to disclose, electing to go to jail instead. Confining newsmen to jail in no way aids the plaintiff in proving his case. Although we do not say that the contempt power should not be exercised, we do say that something more is required to protect the rights of a libel plaintiff. Therefore, we hold that when a defendant in a libel action, brought by a plaintiff who is required to prove actual malice under *New York Times*, refuses to declare his sources of information upon a valid order of the court, there shall arise a presumption that the defendant had no source. This presumption may be removed by a disclosure of the sources a reasonable time

before trial. Because such a disclosure may, for the press, be similar to the disclosure of a "trade secret," there may be circumstances under which an appropriate order limiting outside access to the informant's name when disclosed would not be improper.

*Appeal dismissed.*

KING, J., did not sit; the others concurred.